BRIDGES *v.* STATE EX REL. VAUGHN.*

[No. 26,400. Filed June 14, 1934. Rehearing waived
July 11, 1934.]

*Grabill & Ringer,* and *John H. James,* for appellant.
*Louis B. Ewbank,* and *John H. Allee,* for appellees.

FANSLER, J.—Appellee relator, the holder of a road improvement bond issued by the commissioners of Putnam county for the construction of a free gravel road, payable from a tax levy on the property of Floyd township in that county, brought suit on behalf of all holders of bonds issued in that county for the construction of highways falling due in 1933, seeking to mandate the defendants, the auditor and treasurer of Putnam county, to issue and pay warrants in satisfaction of their bonds maturing in 1933 from the gasoline tax and automobile

(*Note.—Published out of line because not received sooner by Reporter.)

license fees collected by the state and apportioned to Putnam county, pursuant to ordinances and orders of the county council and board of county commissioners of Putnam county, apropriating funds from the special road fund for the purpose of paying said bond maturities, and directing the payment thereof.

Appellant filed an intervening petition alleging that he is a taxpayer, and that he operates an automobile, and uses the highways of the county. He was permitted to intervene as a party defendant. Demurrers to the complaint were overruled, and the defendants answered in general denial. There was a special finding of facts, and a decree mandating the auditor and treasurer as prayed.

The errors assigned question the right of the county to use the gasoline tax and automobile license fund for the payment of highway bonds.

It appears that in September, 1932, the board of commissioners of Putnam county levied a tax to pay all county unit and township road bonds maturing in 1933, with interest; that the county board of tax adjustment in October, 1932, struck out and eliminated the levy, and no tax was levied or collected to pay bond maturities; that in February, 1933, the county council adopted an ordinance transferring from the county gasoline fund to the general fund the sum of $18,256, to be used in payment of county unit road bonds, and the sum of $44,203.31 to be used in payment of township road bonds of various townships in the county therein enumerated. On March 11, 1933, the board of commissioners adopted an ordinance transferring and appropriating the same funds for the same purpose. On the 1st day of January, 1933, there was in the fund $37,408.20, representing an unexpended balance in the fund at the end of the year 1932. In January a payment was re-

ceived from the auditor of state, and on the 18th day of February, 1933, the date of the passage of the ordinance by the county council, there was $72,378.36, and approximately the same amount was in the fund on the date of the passage of the ordinance by the county commissioners. It appears that, before appropriating the money for the payment of bonds, the individual members of the county council and the board of commissioners made individual and personal inquiries and an investigation, and determined that the money in the special road fund on hand at the time of the transfer, and the estimated further receipts from the state during the year, would be in excess of the amount required to construct, maintain, or repair roads and bridges in the county during the year.

§6 of the original Gasoline Tax Law (Acts 1923, p. 535), after providing for distribution of a certain portion of the tax to the various counties, provides:

"All moneys so distributed to the several counties of the state shall constitute a special road fund for each of the respective counties and may be used by the board of commissioners of any county in the construction, maintenance or repair of any public highway within such county."

The clause was amended (Acts 1925, §2, p. 368) to read:

"All monies so distributed to the several counties of the state shall constitute a special road fund for each of the respective counties and may be used by the board of commissioners of any county in the construction, maintenance or repair of any public highway or public highway bridge within such county."

By the act of the special session of 1932, §1, p. 22, the clause was changed to read:

"All moneys so distributed to the several counties of the state shall constitute a special road fund for each of the respective counties and may be used

by the board of commissioners of any county in the construction, maintenance or repair of any county highways or bridges on such county highways within such county."

It will be noted that previous to this amendment the fund might be used to maintain or repair public highways, and by this amendment it is changed to county highways. The act, by a special provision, became effective on and after January 1, 1933. At the same session of the legislature, by ch. 16 of the Acts of 1932, p. 28, jurisdiction of all township highways was transferred to the county commissioners, and all such township highways were made a part of the county highway system. This act, by a special provision, went into effect on the 10th day of September, 1932. The change, therefore, from the words "public highways" to "county highways," in the amendment of 1932, does not affect the situation we are confronted with here, for the reason that it did not become effective until after all township highways had become county highways under the statute last referred to.

It is contended by appellant that the act discloses an intention on the part of the legislature to provide a new plan for financing the *future* construction, maintenance, and repair of highways, by transferring the *future* burden of taxation to the automobilists who use and enjoy the benefits of highways. If this is true, we must interpret the legislative intention as affecting the transfer of the burden in March, 1923; and an allocation of any funds to the payment of any cost of construction, maintenance, or repair of any county or township highway incurred since the original enactment of the law would conform to the legislative intention, since the *future* referred to must be deemed to begin when the law was enacted.

If the cost of the construction of the highways in the

first instance might have been paid out of funds derived from the gasoline tax and automobile license fees, we see no reason why the unpaid balance of the indebtedness incurred for their construction might not now be paid out of any surplus revenue in the fund. Such a disposition of the fund is clearly within the legislative intention as to the use to which it might be put. It may be, and probably is, true that in the early years of the distribution of this tax, roads were not so well improved, needed more maintenance and repair, and that there was necessity for the construction of more new roads than at present, and that the funds so derived were not sufficient to pay all the costs of construction, maintenance, and repair, but that with the years the revenue from this source has increased; that because of new and better construction, fewer new roads are required, and that the expense of maintenance and repairs has greatly decreased. It seems that the funds now available are more than enough to pay all of the cost of current construction, maintenance, or repair, leaving a surplus as is indicated in the case at bar. It may be that since the passage of the act the necessity for, and the cost of construction, maintenance, or repair has steadily decreased, while the amount of revenue available for that purpose has steadily increased. Since there is now a surplus in the fund intended by the legislature for the construction, maintenance, or repair of these highways, and a bonded indebtedness incurred in the construction of highways at a time when the funds available for these purposes were not sufficient to meet the demands, remains still partly unpaid, we can think of no disposition of the surplus funds which meets the legislative intention as to their use and application other than the payment of these unpaid obligations.

If all of the funds that have been allocated to Putnam county, including the year 1933, had been available for the first distribution in 1923, they would have been used, no doubt, in paying the cost of constructing the various highways for which the bonds in question were issued. Since the fund was only available as collected year by year, it was not sufficient to meet the most of maintenance and repairs, and the construction of new highways, and, consequently, bond issues were required. But, since the funds are now available in excess of the current requirements, we see no reason why they cannot be applied now as they might have been then. We agree that the clear legislative intention was to lift as much as possible of the burden of road construction, maintenance, and repair from the shoulders of property. The use of these surplus funds for the purpose of paying bond maturities, rather than requiring a property tax levy for that purpose, is consistent with the legislative intention. The whole history of recent legislation indicates a persistent legislative burden of taxation upon property. This is entirely inconsistent with the levy of a tax to pay highway bonds while there are excess funds intended for the payment of the expenses of construction, maintenance, or repair of highways. If the surplus funds are not used in paying bonds they must either be left to accumulate, unused, with future surplusses, or be expended in wasteful and unnecessary road work, which is also entirely inconsistent with the legislative policy of economy in government.

The jurisdiction vested in the commissioners to expend the proceeds of this fund in the construction, maintenance, or repair of public highways was unlimited by the legislature. We cannot read a limitation into the statute, nor impute to the legislature an

690

intention that these funds should be used in unnecessary construction, maintenance, or repairs at a time when the credit of communities is endangered by the inability of property to pay the taxes necessary to meet public obligations.

We are unable to see how the appellant is injured by this judgment, either as a taxpayer or a motorist. As a taxpayer, he is obviously benefited, since a tax levy would be necessary if these funds were not used to pay the bonds. As a motorist and user of the highways he might be heard to complain if it were proven that there were not sufficient remaining funds to take care of necessary construction, maintenance, or repairs. But it must be presumed, in the absence of a showing to the contrary, that the county officers will properly maintain the highways, and that, if in the future there are not sufficient funds provided by the gasoline tax and license fees allocated to the county for this purpose, a tax on property will be levied to provide sufficient funds for the proper maintenance of the highways.

Judgment affirmed.