WILLIAMS ET AL. *v*. WILLETT ET AL.

[No. 15,494. Filed May 11, 1936.]

*Louis B. Ewbank* and *Robert McKinney,* for appellants.

*Claude B. Philpott, Wallace, Randall & Wallace* and *McFadden & McFadden,* for appellees.

BRIDWELL, J.—On the 6th day of June, 1934, appellants filed this action against appellees, seeking to enjoin certain of the appellees constituting the Board of Commissioners of Fountain County, Indiana, from expending funds allocated to said county by the State of Indiana, from taxes collected by the state on account of the sale of gasoline therein, and as motor vehicle license fees, in the improvement of highways of the county which had theretofore been constructed, by the use of materials wholly different from that of which said highways had been originally constructed and surfaced; and seeking further to enjoin the auditor of said county from issuing warrants on the county treasury in payment of any material purchased or labor performed or to be purchased or performed in the making of any such improvements, and to enjoin the treasurer of said county from paying any such warrants.

Appellees filed their motion to strike out certain specified parts of the complaint which was sustained. This was followed by a demurrer to the complaint on the ground that it failed to state facts sufficient to constitute a cause of action against appellees, which was sustained. Appellants duly excepted to each of these adverse rulings, elected to stand upon their complaint, and declined to plead over. Judgment was rendered that plaintiffs (appellants) take nothing, and pay the costs. This appeal followed, the errors assigned and relied upon for reversal being claimed errors in sustaining the motion to strike out parts of the complaint, and in sustaining the demurrer thereto.

The complaint, omitting its formal parts, but including those parts which were deleted therefrom as a result of the lower court's action in sustaining a motion to strike out certain parts thereof (such parts so stricken out being the parts inclosed in parentheses) is as follows:

"The plaintiffs . . . aver and say: That each of the plaintiffs are residents of the County of Fountain, State of Indiana, and are taxpayers in said County and state, in that they pay both property tax and excise taxes imposed upon the sale of gasoline and motor vehicle license fees, and that they are also representatives of the tax interests of the numerous members and taxpayers of both property and excise taxes of the Fountain County Taxpayers' League, and that they bring this action for themselves and in behalf of all the members of said Fountain County Taxpayers' League, and all other taxpayers similarly situated; that the defendants, William T. Willett, Charles Hallett and Charles McCauley, are the duly elected, qualified and acting members of the Board of Commissioners of the County of Fountain, State of Indiana; that the defendant, Zone A. Helms, is the duly elected, qualified and acting Auditor of said County; and that the defendant, William W. Light, is the duly elected, qualified and acting Treasurer of said county; that by the acts passed by the General Assembly of the State of Indiana, in the years 1932 and 1933, which were approved and became laws of said state, it is provided that a certain percentage of the tax assessed against and collected from vendors from the sale of gasoline and collected from the owners of automobiles as auto license fees, in the State of Indiana, is paid to the several counties of the state for highway uses in said counties, respectively, in constructing, repairing and maintaining public highways of the state in such counties.

"But that the defendants Willett, Hallett, and McCauley, as Board of Commissioners of said county, are only empowered to appropriate and use funds of the county, including funds from said moneys so allocated and paid to this county from said excise taxes upon gasoline and as license fees for automobiles, without action by the County Council of said county being first had and taken making appropriation thereof, only for purposes of maintenance and repair of county highways, as provided in Section 3, Chapter 27, of the Acts of the General Assembly of the State of Indiana, in 1933, at page 141, and do not have jurisdiction to appropriate any of said gasoline and auto license tax money so allocated to said county from said

excise taxes, for the construction (as distinguished from repair and maintenance) of any of the highways of the State in said county or elsewhere. That unless and until the county council shall have first appropriated funds out of said moneys therefor, and unless and until the jurisdiction of the Board of Commissioners of said county, and of the defendants Willett, Hallett and McCauley, as constituting such Board, shall have been first invoked by the filing of a proper petition by freeholders and voters as provided by the statute, the said defendants as constituting said Board of Commissioners do not have jurisdiction to enter upon nor to make a highway improvement that consists of the construction and rebuilding of a highway, on a plan and of materials entirely different (and at a cost largely in excess) of the plan, materials (and cost of) by and for which such highway was originally constructed and surfaced.

"But plaintiffs aver that the defendants, Willett, Hallett, and McCauley, constituting and assuming to act as Board of Commissioners of Fountain County, Indiana, and in the pretended exercise of their power to repair and maintain said highways in said county, are endeavoring, entering upon and threatening to improve, construct, reconstruct and resurface certain of the highways of said state in said County, according to plans and by the use of materials wholly different from those by and with which the said highways were constructed and surfaced and of which they are composed, and in the manner following:

"That defendants acting as the Board of Commissioners of Fountain County, Indiana, have purchased, contracted for the purchase of, and are purchasing in the name and at the expense of said Board and said county, broken and crushed stone immersed in a compound of oil and other substances called emulsified bitumen (at the price of seven dollars and twenty-five cents [$7.25] per ton), (whereas such broken and crushed stone not so immersed therein can be purchased and is readily obtainable on the market for the price of not to exceed ninety cents [90¢] per ton) ; and have purchased and contracted to purchase and are purchasing large quantities of a mineral oil containing bitumen for use in constructing and surfacing

such highways (at the price of twelve and one-half cents [12½¢] per gallon, whereas a good quality of similar oil for protecting the surface of gravel and stone roads and making them dustless can be purchased and is readily obtainable on the market for the price of not to exceed four cents [4¢] per gallon) ; and defendants, acting as such Board, are using, have used, and are threatening further to use the broken and crushed stone and emulsified bitumen in the construction and rebuilding of, and in putting a new and different kind of surface upon gravel roads in said county that were and have heretofore been constructed, repaired and maintained of gravel (without the use of said expensive materials), and in thus making entirely new roads thereof to the depth of, to-wit, four inches, as follows: That the old surface materials of such roads of which they were respectively constructed and with which they were and continuously have been surfaced are being and have been and are threatened to be loosened by mechanical means and removed from the travelled portion of the road to the depth of, to-wit, four inches, and to the width of, to-wit, twenty feet or more, and the bottom surface of the excavation thus made is being, has been, and is threatened to further be spread with a coating of mineral substances, including oil and bitumen, called emulsified bitumen, after which quantities of broken and crushed stones are immersed in such emulsified bitumen, and thence are carried by trucks and dumped upon and in the excavated surface of the gravel road, being thus reconstructed to a depth of, to-wit, four inches, and spread by hand labor, and then rolled smooth with machinery; after which such an amount of sand, gravel, crushed stone and dirt, including what was previously removed, as will absorb all surplus oil, is spread by hand labor upon the newly constructed surface as thus constructed, and thus a new wearing surface is formed in and on the road, of wholly different (and far more expensive) materials (and far more expensive construction) than the materials, methods of construction and wearing surface of which the roads were originally constructed, and with which they have been continuously repaired and maintained since being constructed, until the present time. That to construct a road and the sur-

face thereof by this means and of said materials of said width of twenty feet, and of the depth of four inches, requires the use of a quantity of broken and crushed stone of, to-wit, approximately 538 pounds on each linear foot of the roadway, and approximately 1370 tons on each linear mile of such roadway, and also the use of quantities of said mineral compound containing oil and bitumen, called emulsified bitumen, of approximately 1.3 gallons on each linear foot of such roadway, and approximately 6,864 gallons on each linear mile of such roadway. Plaintiffs aver that for the length of, to-wit, 1,788 linear feet in Fulton Township of said county, in and adjoining the village of Cates, and for the length of, to-wit, 2,650 linear feet adjoining and near Mt. Hope cemetery in said county, the roads have been thus constructed, rebuilt and resurfaced, which were originally constructed and have always previously been repaired and maintained and surfaced with and of sand and gravel as dug from natural deposits thereof and placed on the roadway as foundation and wearing surface in substantially the condition in which they were dug from said natural deposits, and that bills of a contractor for thus constructing, rebuilding and resurfacing said roads for said distances (of much less than a linear mile) have been allowed by said defendants Willett, Hallett and McCauley, acting as such Board of Commissioners, and ordered to be paid out of the county treasury, in sums aggregating $13,535.23, and defendants threaten to pay the same from the county treasury, and unless restrained by this court will do so, all of which has been so allowed and ordered to be paid for thus excavating the surface of gravel roads, filling and excavation with broken and crushed stone and emulsified bitumen, and scattering sand, stone, dust gravel and dirt over the surface thereof as aforesaid, and is for the payment (of said price of $7.25 per ton for broken and crushed stone immersed in emulsified bitumen, and of 12½ cents per gallon) for the emulsified bitumen so used, (and is at the rate of more than $13,000.00 per linear mile of the roads so improved); in addition to which said defendants, assuming to act as the Board of Commissioners of said county has paid, is paying and is threatening to pay from the county

treasury the entire cost and expense of the hand labor required to make such excavations, spread said broken stone, and cover the surface with sand, stone, dust, gravel and dirt (in the large amount of not less than $1700 per linear mile).

"(Whereas, plaintiffs aver that the like quantity of good gravel, in all respects like the gravel of which said roads were constructed and had always been repaired and maintained, that would resurface and recover them to a depth of four inches and to the width of twenty feet, could have been and at all times can be purchased for use in repairing these and all gravel roads of said county for not to exceed 90¢ per ton, being at the rate of a total sum of not to exceed $1,188.00 per linear mile, and not to exceed 22½¢ per linear foot of such roadway, of a width of twenty feet; and that same could be hauled to and delivered upon the roadway at an expense not exceeding $550.00 per linear mile, and at a rate not exceeding 10¢ per linear foot, of roadway twenty feet wide; and that a sufficient quantity of mineral oil suitable and sufficient when spread on the surface of such gravel roads to make the same dustless and such as is in current use for such purposes could at all times and can be purchased for said use at a price of not more than 4¢ per gallon, a total amount sufficient to thus treat and make dustless a linear mile of gravel road of said width of twenty feet for not to exceed $450.00; and that sufficient gravel and oil thus to repair and maintain such gravel roads in as good conditions as if newly constructed could and can be thus purchased, delivered on and at the place where they are to be used at an expense of not to exceed $2,188.00 per linear mile, and not to exceed 41¢ per linear foot of roadway twenty feet wide). Plaintiffs aver that said defendants, as such Board of Commissioners, intend and threaten and unless restrained and forbidden by the court, will continue thus to rebuild, reconstruct and resurface gravel roads in and of said county with said materials wholly different from the materials of which they were originally constructed and have since been repaired and maintained (and at an expense for materials and the cost of such rebuilding, reconstruction and resurfacing many times as great as it would and will cost to repair and maintain the same with and of

the materials and method of construction with and by which they were originally built and constructed, and the cost of rendering them dustless as gravel roads). And intend and threaten to continue and unless restrained by the court will do all this without any appropriations of money for said purposes by the county council of said county, and without the filing of any petition by freeholders or voters asking for any such improvements, and without taking any of the steps as to serving notice, giving opportunity for filing remonstrances, and without doing any of the acts required by law upon building a highway improvement at county expense when so petitioned for.

"Plaintiffs aver that defendants, as the Board of Commissioners of said county, also have purchased and are purchasing and intending and threatening to purchase large quantities of broken and crushed stone immersed in emulsified bitumen, and many gallons of such emulsified bitumen (at and for the aforesaid prices), which they have used, are using and are threatening and intending, and unless restrained by the court will use in rebuilding, reconstructing and resurfacing roads in and of said county that were heretofore built and constructed of broken and crushed stone without any binder, of asphalt or otherwise, and that have always heretofore until this time been repaired and maintained and surfaced with such untreated broken and crushed stone; and that they are using and are threatening to use the materials so purchased in so constructing such roads as to put thereon a new and different (and far more expensive) surface and base of the depth of, to-wit, four inches, as follows: That on such stone roads defendants, assuming to act as the Board of Commissioners of said Fountain County, Indiana, have caused, are causing and are threatening and intend to cause the old wearing surface of such road to be loosened by mechanical means, and to be removed to the depth of, to-wit, four inches, or more, as aforesaid, and then spread in and on the bottom of the excavation thus made a coating of said emulsified bitumen, and then place upon such coating in said excavation quantities of crushed and broken stone that has been previously immersed in such emulsified bitumen, and then carried by trucks to the places where it is de-

posited in such excavation and there spread to a smooth surface by hand labor, and then rolled solid and smooth, and then covered with a slight coating of sand, stone dust, gravel or dirt, including some of what has been previously removed in making said excavation; and all at a cost which they have been paying and are threatening and intend to pay for the materials of broken and crushed stone immersed in emulsified bitumen, and for such emulsified bitumen, and for such emulsified bitumen in which to immerse the same (far greater than would be the cost of covering such roads to the like depth and width for a like number of linear feet or miles, with the broken and crushed stone of which said roads were originally constructed and surfaced, and with which they have since been repaired and maintained, and of covering the surface thereof with a good quality of road oil that will render it dustless, to-wit: at the cost and expense for such broken and crushed stone immersed in emulsified bitumen of not less than $2.50 per linear foot of roadway twenty feet in width, and not less than $13,000.00 per linear mile of said width, besides and in excess of the labor required to make such excavation, to spread said material, and to put on the surface covering, in the added amount of not less than $1,700.00 per mile).

"(Whereas, plaintiffs aver that a like quantity of broken and crushed stone, of such quality and size as that of which said stone roads were originally built and constructed and have ever since been repaired and maintained, sufficient to cover such roadway therewith to like depth of four inches [but without immersion in emulsified asphalt] can be purchased and procured to be delivered upon the roads where it is to be used, spread level and rolled smooth at and for the same price that similar quantities of gravel, as hereinbefore averred, could be obtained; that said crushed stone can be obtained in Fountain County from deposits within its borders at the same price that washed gravel can be obtained).

"Plaintiffs aver that no petition has been filed by any freeholders and/or voters of the county, asking that any such improvements, construction, reconstruction, building or resurfacing of any of said roads be done by said defendants, the Board of

Commissioners, or at all; no notice for any hearing before said defendants as constituting the Board of Commissioners, or otherwise, or before the Board of Commissioners of said county, has ever been given, no dates have been set for any such hearings, and no provision for remonstrance thereto, have been made by said Board of Commissioners or by any defendants in any capacity, as provided by statute when a highway improvement is to be constructed at the expense of the public treasury; nor has the county council of said Fountain County made any appropriation for the construction, building or resurfacing of any such roads or the making in any manner of any such highway improvements out of that part allocated and paid by the State of Indiana to said county of Fountain, of the excise taxes and fees taxed against and collected from the sale of gasoline and motor vehicle license fees by said State of Indiana (nor from any moneys of said county or its treasury). But without any such petition being filed or any such appropriation being made by said county council, the defendants, Willett, Hallett, and McCauley, as Board of Commissioners of said county, have entered into contracts for the purchase and use of said materials of broken and crushed stone immersed in emulsified bitumen, of such emulsified bitumen, at the prices aforesaid, and have commenced and entered upon the making of such highway improvements with such materials so purchased, in the manner and at the expense as above stated, and are paying for the same and threatening to pay for the same as above stated, and have threatened and intend to continue the excavating of road surfaces and rebuilding and constructing such roads of the county, both gravel roads and stone roads, under pretense of repairing the same, unless restrained.

"That to pay for the broken and crushed stone, immersed in emulsified bitumen, and for the emulsified bitumen which have been already delivered to and used on gravel and stone roads of said county by said defendants, assuming to act as the Board of Commissioners of said Fountain County, at the said prices at which defendants have bargained to pay for same, and at which they have allowed many claims for same, and to purchase at the expense of the county additional quantities of such broken and

crushed stone immersed in emulsified bitumen, and pay for the same, out of the money in the county treasury (whether that money so received from the State of Indiana), collected by it as excise taxes for the sale of gasoline or as auto license fees, will cause these plaintiffs and all taxpayers similarly situated, whom they represent, an injury they will sustain unless the defendants, Willett, Hallett, and McCauley, as constituting the Board of Commissioners of said county, be enjoined from making said highway improvements and spending said money for the same in excess of merely repairing and maintaining the roads, and the defendant, Helms, as Auditor of Fountain County, be enjoined from issuing warrants on the county treasury in payment for the same, and the defendant, Light, as treasurer of said county, be enjoined from paying any such warrants for payment thereof that may have been or may be issued in payment thereof.

"WHEREFORE, these plaintiffs as such taxpayers, on behalf of themselves and of the other taxpayers whom they represent, pray that the defendants aforesaid be enjoined from making any highway improvements by way of building, constructing, reconstructing and resurfacing stone and gravel roads, or doing more than to repair and maintain such roads, or to purchase or pay for materials for any such purpose other than the repair and maintenance of such roads as heretofore constructed, out of any money in the county treasury not appropriated for such purpose by the county council (whether) derived from gasoline taxes and motor vehicle license fees paid by the State of Indiana to said Fountain County, or from any other source; and to enjoin them from proceeding to build, construct, reconstruct or resurface any such roads, or to do more than repair and maintain the same, or to purchase materials for any other such purposes, unless and until such highway improvement has been duly petitioned for by taxpayers and voters of the county, and notice and an opportunity to file remonstrances has been duly afforded, and the construction of such improvement has been duly ordered by proper adjudication; and from allowing or paying any claims or issuing any warrants in payment for any materials purchased, contracts let

or work done in making any such highway improvements not so ordered, or for the construction the county council has not made an appropriation, except only for the repair and maintenance of such roads without substantial change of materials, manner of applying them, and condition of the road thus repaired."

We are of the opinion that no reversible error was committed by the court below in sustaining the motion to strike out parts of the complaint. The parts stricken were not essential to the cause of action attempted to be pleaded when we view the complaint as a whole in order to determine its general scope and theory. The complaint proceeds upon the theory that appellees are without authority at law, and have no legal right to do the acts which appellants seek to enjoin. The portions of the complaint stricken out do not tend to help state a cause of action predicated upon this theory.

In determining whether the court erred in sustaining the demurrer, we are required to consider certain sections of our statutory law in order to ascertain if the acts done and threatened by said board of commissioners, as alleged in the complaint, are within its statutory powers and authority.

It is contended by appellants that funds distributed to the county by the state from the gasoline fund and the motor vehicle fund cannot be expended by the board of commissioners of a county in the manner and for the purpose as averred in the complaint without an appropriation by the county council of such funds for such purpose, and further, that it requires a petition by freeholders or voters of the county asking for any such improvement before the board of commissioners has jurisdiction to act.

That a board of commissioners of any county has no powers other than those expressly granted by the legis-

lature, or necessarily implied from the powers granted, is well established. We find no statute enacted prior to 1923 which would authorize the board of commissioners of a county to construct a macadamized highway without a petition therefor being first filed by freeholders and voters, or landowners, of the county petitioning for such improvement. However, the various statutes cited by appellants for the improvement of highways on petition have no applicability in the instant case where the funds being used are already in the county treasury, and subject to use by the board of commissioners for certain specified purposes as designated by the statute allocating such funds to the county, but apply only to instances where the costs of construction are to be paid from proceeds derived from the sale of bonds issued and sold to finance the improvement, and to be eventually liquidated by funds raised by direct local taxation on property of the local unit of government in which the highway is proposed to be constructed, or, as in some instances, by direct assessments against lands benefited.

The General Assembly of 1923 enacted our original "gasoline tax law," and section 6 of this law, after providing for distribution of a certain portion of the taxes to the various counties of the state, provided that "all moneys so distributed to the several counties of the state shall constitute a special road fund for each of the respective counties and may be used by the Board of Commissioners of any county in the construction, maintenance, or repair of any public highway within such county." (Acts 1923, Chapter 182, page 532, see §47-1506, Burns 1933, §16029, Baldwin's 1934.) The legislature of 1925 (Acts 1925, chapter 146, page 367) amended this law so as to provide that such funds might be used in the construction, maintenance, or repair of any public highway or public highway bridge

within such county, and, at the special session held in 1932 (Acts 1932, chapter 12, page 23) another change was made which provides that such funds may be used by the board of commissioners of any county in the construction, maintenance, or repair of any county highways or the bridges on such county highways within such county. Exactly similar provisions concerning the use by boards of commissioners of funds derived from motor vehicle license fees, and allocated by the state to the various counties thereof, exist. See Acts 1933, chapter 123, page 732 (§47-107, Burns 1933, §11112, Baldwin's 1934.) All public highways in a county at the time of the filing of the complaint herein were "county highways" constituting a part of the county highway system. See Acts 1932, chapter 16, page 28 (§§36-901 to 36-905, Burns 1933, §§8711-8715, Baldwin's 1934).

We find nothing in the Acts of 1923, *supra,* nor in any subsequent legislation enacted prior to the bringing of this action which would seem to indicate that it was the legislative intent to limit the use of funds distributed to a county from gasoline and motor vehicle taxes to such amounts as the county council of the county might appropriate for the construction, maintenance, or repair of county highways. The legislature, itself, provided that the moneys so allotted "shall constitute a special road fund," and there is no provision in either of the statutes heretofore mentioned which requires an appropriation by the council or a petition by freeholders or voters of the county before the board of commissioners can lawfully use such funds for the purposes for which they were allocated to the county. That these funds might be used by boards of commissioners of the several counties of the state on their own initiative, and in the exercise of a sound discretion, for the construction, maintenance, or repair of county highways, seems clear from the language of the statute and the

failure of the legislature to place any limit on the right of such boards in the use of such funds for any of the purposes for which said funds were provided by the state. There was a legislative appropriation of these funds for specific purposes, and none other was required until the legislature itself determined otherwise. In this connection we deem it proper to note that the legislature of 1935 (Acts 1935, chapter 110, page 407, §26-522, Burns 1933 Supp., §5386, Baldwin's 1934) decided on a change of policy, and since this law became effective an appropriation by the county council of these "special road funds" is necessary. Had pre-existing statutes required that these funds be appropriated by the county council, the passage of this statute was a needless action, but it was a necessary one if it was desired to limit the authority of boards of commissioners in the use of such funds. For a discussion of some of the questions herein considered, see *Bridges* v. *State ex rel. Vaughn* (1934), 208 Ind. 684, 190 N. E. 758.

In view of the conclusion reached, we deem it unnecessary to determine whether the acts which the complaint avers the appellees constituting the board of commissioners, had done, and were threatening to continue to do, would amount to a construction or reconstruction of an improved highway, or be properly classified as maintenance, or repair.

The court did not err in sustaining the demurrer to the complaint.

Judgment affirmed.